JUDGE FEINERMAN

MAGISTRATE JUDGE HARJANI

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARTER BRETT | No. 20CR 80<br><br>Judge<br><br>Violations: Title 15, United States Code, Section 1;<br>Title 18 United States Code, Section 1956(h) |

FILED

FEB - 5 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**INFORMATION**

The UNITED STATES OF AMERICA charges that:

**COUNT ONE**

DEFENDANT AND CO-CONSPIRATORS

1. CARTER BRETT ("defendant") is hereby made defendant on the charge contained in this Information.

2. During the period covered by this Information, Manufacturer A was a corporation organized and existing under the laws of Georgia, with its principal place of business in Georgia. During the period covered by this Information, Manufacturer A manufactured flooring products, including carpet, tile, hardwood, laminate, and vinyl products, and sold these products in this District and elsewhere.

3. During most of the period covered by this Information, the defendant was an account executive at Manufacturer A, whose job responsibilities included the promotion and sale of Manufacturer A's commercial flooring products to providers of commercial flooring services and products (as defined in Paragraph 10) in this

District. As an account executive, the defendant sold Manufacturer A's products by offering prices within a set range established and authorized by Manufacturer A in a pricing matrix.

4. During the period covered by this Information, Company A was a corporation organized and existing under the laws of Illinois, with its principal place of business in the Northern District of Illinois. During the period covered by this Information, Company A was a provider of commercial flooring services and products (as defined in Paragraph 10) engaged in the sale of commercial flooring services and products in the United States. During the period covered by this Information, Co-conspirator A3 was the president of Company A and Co-conspirator A6 was an employee of Company A.

5. During the period covered by this Information, Company B was a corporation organized and existing under the laws of Illinois, with its principal place of business in the Northern District of Illinois. During the period covered by this Information, Company B was a provider of commercial flooring services and products (as defined in Paragraph 10) engaged in the sale of commercial flooring services and products in the United States. During the period covered by this Information, Co-conspirator B4 was an employee of Company B.

6. During the period covered by this Information, Company E was a corporation organized and existing under the laws of Illinois, with its principal place of business in the Northern District of Illinois. During the period covered by this Information, Company E was a provider of commercial flooring services and products

(as defined in Paragraph 10) engaged in the sale of commercial flooring services and products in the United States. During the period covered by this Information, Co-conspirator E1 was an employee of Company E.

7. Various co-conspirators not made defendants in this Information, including Company A, Company B, Company E, and other companies and individuals, participated in the offense charged in this Information and performed acts and made statements in furtherance thereof.

8. Any reference in this Information to any act, deed, or transaction of any corporation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## BACKGROUND

9. During the period covered by this Information, the defendant promoted and sold Manufacturer A's commercial flooring products to providers of commercial flooring services and products. The defendant's co-conspirators were providers of commercial flooring services and products in the United States, including to customers in the Northern District of Illinois.

10. Providers of commercial flooring services and products remove any preexisting flooring products at the job site, prepare the floor surface for installation, and install new flooring products, including but not limited to carpet, wood, vinyl, tile, and laminate flooring products.

## DESCRIPTION OF THE OFFENSE

11. Beginning at least as early as 2013, the exact date being unknown to the United States, and continuing through at least June 22, 2017, in the Northern District of Illinois and elsewhere, the defendant entered into and engaged in a combination and conspiracy with Company A, Company B, Company E, and other companies and individuals to suppress and eliminate competition by agreeing to rig bids and fix prices of commercial flooring services and products sold in the United States. The combination and conspiracy engaged in by the defendant and co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

12. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and his co-conspirators, the substantial terms of which were to rig bids and fix prices of commercial flooring services and products sold in the United States.

## MEANS AND METHODS OF THE CONSPIRACY

13. For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and his co-conspirators did those things that they combined and conspired to do, including, among other things:

   a. attending meetings and participating in conversations and other communications to discuss methods for rigging bids and fixing the prices of commercial flooring services and products sold in the United States;

b. agreeing, during those meetings, conversations, and other communications, to allocate a customer's business, and rig bids and fix the prices of commercial flooring services and products sold in the United States;

c. exchanging pricing-related information to enable co-conspirator companies to submit complementary bids for commercial flooring services and products to potential customers, so that the agreed-upon co-conspirator company would win the business;

d. soliciting complementary bids to provide commercial flooring services and products to potential customers, in accordance with the agreement;

e. submitting complementary bids to provide commercial flooring services and products to potential customers, in accordance with the agreement;

f. selling commercial flooring services and products in the United States at collusive and noncompetitive prices;

g. accepting payment for commercial flooring services and products in the United States at collusive and noncompetitive prices;

h. soliciting kickback payments so that the defendant would provide an "edge" in pricing—that is, artificially low pricing;

i. paying kickbacks to the defendant in exchange for receiving artificially low prices, a fact not disclosed to Manufacturer A; and

j. engaging in conversations and other communications for the purpose of monitoring and enforcing adherence to the conspiracy.

14. In particular, the defendant initiated and orchestrated a conspiracy to rotate winning bids for flooring installation contracts to be performed for Victim 12, a public post-secondary education institution located in this District. More specifically:

    a. In or about early 2013, the defendant contacted Co-conspirator A6 at Company A, Co-conspirator B4 at Company B, and Co-conspirator E1 at Company E and invited them to participate in a bid-rigging conspiracy whereby the winning bidder for projects awarded by Victim 12 would be rotated among Company A, Company B, and Company E.

    b. The defendant offered the lowest price to the co-conspirator designated to win the bid and higher prices to the other two co-conspirators. The defendant directed the two other co-conspirators to submit complementary bids so that the designated winning co-conspirator would have the lowest bid and win the business for the given flooring project at Victim 12.

    c. The defendant then rotated which co-conspirator received the low prices—and thus won the business—for subsequent flooring projects.

15. The co-conspirators rigged and submitted bids for more than 15 projects to Victim 12, with the contracts having a total value of at least $600,000.

16. On or about January 8, 2014, in the Northern District of Illinois, Eastern Division, the defendant caused to be deposited a check in the amount of $1962.40 in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois in the name of MGAB13 Consulting, Inc., payable by Company B, representing kickback

payments for two contracts: $1854.20 represented a kickback paid to defendant by Company B for a contract Company B obtained via the bid-rotation conspiracy described above in Paragraph 14; and the balance of $108.00 represented a kickback paid by Company B for another project.

## TRADE AND COMMERCE

17. During the period covered by this Information, Company A, Company B, and Company E sold commercial flooring services and products in the United States in a continuous and uninterrupted flow of interstate trade and commerce. In addition, records and documents necessary for the sale and provision of such services and products by the corporate conspirators, as well as payments and solicitations for those services and products, traveled in interstate commerce.

18. During the period covered by this Information, the business activities of the corporate co-conspirators in connection with the sale and provision of commercial flooring services and products that are the subject of this Information were within the flow of, and substantially affected, interstate commerce. Acts in furtherance of this conspiracy were carried out within the Northern District of Illinois and elsewhere.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

## COUNT TWO

### BACKGROUND

19. Paragraphs 1 through 16 above are realleged as if set forth in full herein.

20. During the period covered by this Information, Company G was a corporation organized and existing under the laws of Illinois, with its principal place

of business in the Northern District of Illinois. During the period covered by this Information, Company G was a provider of commercial flooring services and products (as defined in Paragraph 10 above) engaged in the sale of commercial flooring services and products in the United States.

21. During the period covered by this Information, Company H was a corporation organized and existing under the laws of Illinois, with its principal place of business in the Northern District of Illinois. During the period covered by this Information, Company H was a provider of commercial flooring services and products (as defined in Paragraph 10) engaged in the sale of commercial flooring services and products in the United States.

22. As an account executive for Manufacturer A, defendant owed a duty of honest services to his employer regarding decisions made relating to the prices at which defendant offered and sold his employer's products.

23. Beginning in or about 2013, and continuing through at least late 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, CARTER BRETT, defendant herein, together with his co-conspirators, knowingly and with intent to defraud, devised and participated in a scheme to defraud and to deprive his employer, Manufacturer A, of its right to defendant's honest services through the solicitation, payment, and acceptance of kickbacks.

24. As a result of the scheme, the defendant intended and caused tangible monetary harm to his employer in the form of lower revenue derived from the low

prices that he offered to co-conspirators by not disclosing to Manufacturer A that he was offering these low prices in exchange for personally receiving kickback payments.

25. It was part of the scheme that the defendant solicited and accepted kickbacks in the form of cash or cash equivalents from co-conspirators so that the defendant would offer unlawfully low pricing to defendant's commercial flooring provider co-conspirators. As the co-conspirators intended, the defendant materially deceived Manufacturer A by not disclosing to his employer that he was being paid personally to offer low prices.

26. It was further part of the scheme that the defendant's co-conspirators charged unlawfully fixed prices, as set by the defendant, to their end-users for the provision of commercial flooring products from Manufacturer A.

## DESCRIPTION OF THE OFFENSE

27. Beginning in or about 2013, and continuing at through at least late 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, CARTER BRETT, defendant herein, did knowingly conspire with co-conspirators Company A, Co-conspirator A3, Company B, Company G, Company H, and other co-conspirators to conduct financial transactions affecting interstate commerce in violate of Title 18, United States Code, Section 1956(a)(1)(B)(i), which transactions involved the proceeds of specified unlawful activities, namely, wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346,

      a.    Knowing, while conducting and attempting to conduct such financial transactions, that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and

      b.    Knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities.

### MEANS AND METHODS OF THE CONSPIRACY

28.    The principal object of the conspiracy was to cause the kickback payments received by defendant, which represented the proceeds of specified unlawful activities in violation of Title 18, United States Code, Sections 1343 and 1346, described above in Paragraphs 23-26, to be made payable to a shell corporation, established in the name of defendant's family member, and deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois, an account opened in the name of defendant's family member, for the purpose of concealing and disguising the nature, location, source, ownership, and control of those criminal proceeds.

29.    In early-to-mid 2013, Co-conspirator suggested to the defendant that the defendant create a shell company to receive the defendant's kickback payments from Company A in order to conceal the defendant's receipt of the payments from law enforcement officials and from Manufacturer A, the defendant's employer.

30.    It was further part of the scheme that on or about July 10, 2013, the defendant then caused to be established a corporation, MGAB13 Consulting, Inc.

("MGAB13"), organized and existing under the laws of Illinois, with its purported principal place of business in the Northern District of Illinois, and under the nominal ownership of defendant's family member. The defendant hid the true purpose of MGAB13—namely, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activities—by causing the corporation to open bank accounts in the name of his family member and by falsely indicating that his family member was a flooring consultant. As the defendant and co-conspirators knew, defendant's family member had no experience in the commercial flooring industry and did not perform any consulting services. The sole purpose of MGAB13 was to receive the kickback payments intended for the defendant in order to conceal and disguise the nature, location, source, ownership, and control of those kickback payments.

31. Defendant received the following kickback payments from Company A during the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 23-26, which defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 09/24/2013 | 7704 | 10/07/2013 | $ 15,828.00 |
| 01/31/2014 | 500105 | 02/19/2014 | $ 4,705.00 |
| 02/07/2014 | 500195 | 02/19/2014 | $ 3,184.00 |
| 08/12/2015 | 508228 | 08/14/2015 | $ 11,630.00 |
| 12/25/2015 | 510800 | 12/30/2015 | $ 4,002.45 |
| 09/30/2016 | 517025 | 10/03/2016 | $ 912.00 |

|  | TOTAL | $ | 40,261.45 |

32. In addition to the transaction described above in Paragraph 16, Defendant received the following kickback payments from Company B during the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 23-26, which defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 04/18/2014 | 053439 | 04/28/2014 | $ 7,397.50 |
| 04/22/2014 | 053440 | 04/28/2014 | $ 2,250.00 |
| 12/05/2014 | 054541 | 12/18/2014 | $ 7,500.00 |
| 12/10/2014 | 054558 | 12/18/2014 | $ 3,125.00 |
| 01/28/2016 | 056511 | 02/01/2016 | $ 6,308.06 |
| 04/12/2016 | 056874 | 05/02/2016 | $ 9,305.50 |
| 09/29/2016 | 057693 | 10/05/2016 | $ 3,672.00 |
| 10/09/2017 | 059725 | 10/16/2017 | $ 2,930.30 |
|  |  | TOTAL | $ 42,488.36 |

33. Defendant additionally received the following kickback payments from Company G during the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 23-26, which defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 08/19/2013 | 24410 | 09/03/2013 | $ 1,562.00 |
| 04/17/2014 | 26195 | 04/28/2014 | $ 892.00 |
| 03/11/2015 | 028545 | 05/18/2015 | $ 3,360.00 |
| 03/17/2015 | 028563 | 05/18/2015 | $ 3,000.00 |
| XX/XX/2015 | 028679 | 05/18/2015 | $ 3,000.00 |
| 04/07/2015 | 028730 | 05/18/2015 | $ 3,000.00 |
| 04/09/2015 | 028751 | 07/16/2015 | $ 6,000.00 |
| 05/25/2016 | 031808 | 05/31/2016 | $ 2,144.00 |
| | | TOTAL | $ 22,958.00 |

34. Defendant additionally received the following kickback payment from Company H during the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 23-26, which defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 01/29/2014 | 45487 | 02/03/2014 | $ 4,000.00 |
| 09/05/2014 | 46863 | 09/12/2014 | $ 2,130.00 |
| | | TOTAL | $ 6,130.00 |

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1956(h)

_____
MAKAN DELRAHIM
Assistant Attorney General

_____
BERNARD A. NIGRO, JR.
Principal Deputy Assistant Attorney General

_____
RICHARD A. POWERS
Deputy Assistant Attorney General
for Criminal Enforcement

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

U.S. Department of Justice,
Antitrust Division

_____
KALINA M. TULLEY
Chief

_____
JASON C. TURNER, IL Bar No. 6226269
  jason.turner@usdoj.gov
CHESTER CHOI, CA Bar No. 268410
  chester.choi@usdoj.gov
JILLIAN ROGOWSKI, IL Bar No. 6333254
  jillian.rogowski@usdoj.gov
Trial Attorneys

DANIEL W. GLAD, IL Bar No. 6291567
  daniel.glad@usdoj.gov
Assistant Chief

U.S. Department of Justice,
Antitrust Division
Chicago Office
209 South LaSalle Street
Suite 600
Chicago, IL 60604
Tel: (312) 984-7200