

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**

MAR 05 2020

Judge Gary Feinerman
United States District Court

UNITED STATES OF AMERICA

    v.

CARTER BRETT

No. 20-CR-00080

Judge Feinerman

## PLEA AGREEMENT

1.    This Plea Agreement between the UNITED STATES OF AMERICA and the defendant, CARTER BRETT, and his attorney, GREGG L. SMITH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below. The parties to this Plea Agreement have agreed upon the following:

### Charges in This Case

2.    Count One of the Information in this case charges the defendant with entering into and engaging in a combination and conspiracy with Company A, Company B, Company E, and other companies and individuals to suppress and eliminate competition by agreeing to rig bids and fix prices of commercial flooring services and products sold in the United States. The combination and conspiracy engaged in by the defendant and co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.     Count Two of the Information in this case charges the defendant with knowingly conspiring with Co-conspirators Company A, Co-conspirator A3, Company B, Company G, Company H, and other co-conspirators to conduct financial transactions affecting interstate commerce in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), which transactions involved the proceeds of specified unlawful activities, namely, wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346, knowing, while conducting and attempting to conduct such financial transaction, that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities, in violation of Title 18, United States Code, Section 1956(h).

4.     The defendant has read the charges against him contained in the Information, and those charges have been explained fully to him by his attorney.

5.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Rights of Defendant

6.     The defendant understands his right:

   a.     to be represented by an attorney;

   b.     to be charged by Indictment;

   c.     to plead not guilty to any criminal charge brought against him;

      d.     to have a trial by jury, at which he would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for him to be found guilty;

      e.     to confront and cross-examine witnesses against him and to subpoena witnesses in his defense at trial;

      f.     not to be compelled to incriminate himself;

      g.     to appeal his conviction, if he is found guilty; and

      h.     to appeal the imposition of sentence against him.

### Agreement to Plead Guilty and Waive Certain Rights

7.     The defendant knowingly and voluntarily waives:

      a.     the rights set out in subparagraphs 6(b)–(f) above;

      b.     the right to file any appeal or collateral attack, including but not limited to an application or motion under 28 U.S.C. § 2241 or 2255, that challenges his conviction, including but not limited to any appeal or collateral attack raising any argument that (1) the statute to which he is pleading guilty is unconstitutional or (2) the admitted conduct does not fall within the scope of such statute; and

      c.     the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742(a) or an application or motion under 28 U.S.C. § 2241 or 2255, that challenges the sentence imposed by the Court if that sentence is consistent with or below the Recommended Sentence (as defined in Paragraph 19 of this Plea Agreement), regardless of how the sentence is determined

by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b).

d. Nothing in this Paragraph 7, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Consistent with Fed. R. Crim. P. 11(b)(1)(O), the defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status, including removal from the United States, denial of citizenship, and denial of admission to the United States in the future.

e. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a two-count Information to be filed in the United States District Court for the Northern District of Illinois.

8. The defendant will plead guilty to the criminal charges described in Paragraphs 2 and 3 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 10 of this Plea Agreement.

9. The United States agrees that at the arraignment, it will stipulate to the release of the defendant on his personal recognizance, pursuant to 18 U.S.C. § 3142, pending the sentencing hearing in this case.

### Factual Basis for Offenses Charged

10.     The defendant will plead guilty because he is in fact guilty of the charges contained in the Information.  In pleading guilty, the defendant admits the following facts, and each and every fact contained in the Information, and that those facts establish his guilt beyond a reasonable doubt to the charges contained in the Information:

a.     For purposes of this Plea Agreement, the "Relevant Period" is that period beginning at least as early as 2013, and continuing through at least late 2017.

b.     During the Relevant Period, the defendant was employed by Manufacturer A, a corporation organized and existing under the laws of Georgia, with its principal place of business in Georgia.  During Relevant Period, Manufacturer A manufactured flooring products, including carpet, tile, hardwood, laminate, and vinyl products, and sold these products in this District and elsewhere.  During most of the period covered by this Information, the defendant was an account executive at Manufacturer A, whose job responsibilities included the promotion and sale of Manufacturer A's commercial flooring products to providers of commercial flooring services and products in this District.  As an account executive, the defendant sold Manufacturer A's products by offering prices within a set range established and authorized by Manufacturer A in a pricing matrix.

### Count One: Bid Rigging Conspiracy

c.     During the Relevant Period, Company A, Company B, and Company E were corporations organized and existing under the laws of Illinois with principal places of business located in this District, and were providers of commercial

flooring services and products in the United States. Providers of commercial flooring services and products remove any preexisting flooring products at the job site, prepare the floor surface for installation, and install new flooring products, including but not limited to carpet, wood, vinyl, tile, and laminate flooring products.

d. During the Relevant Period, the defendant participated in a conspiracy with companies and individuals engaged in the sale of commercial flooring services and products, including Company A, Company B, and Company E, the primary purpose of which was to suppress and eliminate competition by agreeing to rig bids and fix prices of commercial flooring services and products sold in the United States. In furtherance of the conspiracy, the defendant initiated and orchestrated a conspiracy to rotate winning bids for flooring installation contracts to be performed for Victim 12, a public post-secondary education institution located in this District.

e. During the Relevant Period, the defendant contacted Co-conspirator A6 at Company A, Co-conspirator B4 at Company B, and Co-Conspirator E1 at Company E, and invited them to participate in a bid rigging conspiracy whereby the winning bidder for projects awarded by Victim 12 would be evenly divided among Company A, Company B, and Company E by rotating the winning bidder.

f. The defendant offered the lowest price to the co-conspirator designated to win the bid and higher prices to the other two co-conspirators. The defendant directed the two other co-conspirators to submit complementary bids so that the designated winning co-conspirator would have the lowest bid and win the business for the given flooring project at Victim 12. The defendant then rotated which

co-conspirator received the lowest price—and thus won the business—for subsequent flooring projects.

g.     In this manner, the co-conspirators rigged and submitted bids to Victim 12 for more than 15 projects, with the contracts having a total value of at least $600,000.

h.     On or about January 8, 2014, in the Northern District of Illinois, Eastern Division, the defendant caused to be deposited a check in the amount of $1962.40 in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois in the name of MGAB13, payable by Company B, representing kickback payments for two contracts: $1854.40 represented a kickback paid to defendant by Company B for a contract Company B obtained via the bid-rotation conspiracy described above; and the balance of $108.00 represented a kickback paid by Company B for another project.

i.     During the Relevant Period, the defendant, Company A, Company B, and Company E sold commercial flooring services and products in the United States in a continuous and uninterrupted flow of interstate trade and commerce. In addition, records and documents necessary for the sale and provision of such services and products by the corporate conspirators, as well as payments and solicitations for those services and products, traveled in interstate commerce. The business activities of the defendant, Company A, Company B, and Company E in connection with the sale and provision of commercial flooring services and products

that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

      j.     Acts in furtherance of this conspiracy were carried out within the Northern District of Illinois and elsewhere. Commercial flooring services and products that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District and elsewhere.

### Count Two: Money Laundering Conspiracy

      k.     During the Relevant Period, Company G was corporation organized and existing under the laws of Illinois with its principal place of business located in this District, and it provided commercial flooring services and products in the United States.

      l.     During the Relevant Period, Company H was a corporation organized and existing under the laws of Illinois, with its principal place of business in this District, and it provided commercial flooring services and products in the United States.

      m.     Beginning in or about 2013, and continuing through at least late 2017, the defendant, together with his co-conspirators, knowingly and with intent to defraud, devised and participated in a scheme to defraud and to deprive his employer, Manufacturer A, of its right to defendant's honest services through the solicitation, payment, and acceptance of kickbacks. As an account executive for Manufacturer A, the defendant owed a duty of honest services to his employer regarding decisions made relating to the prices at which the defendant offered and sold his employer's products.

8

n. It was part of the scheme that the defendant solicited and accepted kickbacks in the form of cash and cash equivalents from co-conspirators so that the defendant would offer unlawfully low pricing, a material fact not disclosed to Manufacturer A, to the defendant's commercial flooring provider co-conspirators. As the co-conspirators intended, the defendant materially deceived Manufacturer A by not disclosing to his employer that he was being paid personally to offer these low prices.

o. It was further part of the scheme that the defendant's co-conspirators charged unlawfully fixed prices, as set by the defendant, to their end-users for the provision of commercial flooring products from Manufacturer A.

p. It was further part of the scheme that the defendant concealed and attempted to conceal his receipt of kickback payments. In early-to-mid 2013, Co-conspirator A3 suggested to the defendant that the defendant create a shell company to receive the defendant's kickback payments from Company A in order to conceal the defendant's receipt of the payments from law enforcement officials and from Manufacturer A, the defendant's employer.

q. It was further part of the scheme that on or about July 10, 2013, the defendant then caused to be established a corporation, MGAB13 Consulting, Inc. ("MGAB13"), organized and existing under the laws of Illinois, with its purported principal place of business in the Northern District of Illinois, and under the nominal ownership of the defendant's family member. The defendant hid the true purpose of MGAB13—namely, to conceal and disguise the nature, location, source, ownership,

and control of the proceeds of specified unlawful activities—by causing the corporation to open bank accounts in the name of his family member and by falsely indicating that his family member was a consultant. As the defendant and co-conspirators knew, defendant's family member had no experience in the commercial flooring industry and did not perform any consulting services, and the sole purpose of MGAB13 was to receive the kickback payments intended for the defendant in order to conceal and disguise the nature, location, source, ownership, and control of those kickback payments.

   r. As a result of the scheme, the defendant intended and caused tangible monetary harm to his employer in the form of lower revenue derived from the low prices that he offered to co-conspirators by not disclosing to Manufacturer A that he was offering these low prices in exchange for personally receiving kickback payments.

   s. Beginning in or about 2013, and continuing at through at least late 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, CARTER BRETT, defendant herein, did knowingly conspire with co-conspirators Company A, Co-conspirator A3, Company B, Company G, Company H and other co-conspirators to conduct financial transactions affecting interstate commerce in violate of Title 18, United States Code, Section 1956(a)(1)(B)(i), which transactions involved the proceeds of specified unlawful activities, namely, wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346, knowing, while conducting and attempting to conduct such financial transaction, that the property involved in

the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities.

        t.    The defendant received the following kickback payments from Company A during the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 10(m)-(s), which the defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois, in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 09/24/2013 | 7704 | 10/07/2013 | $ 15,828.00 |
| 01/31/2014 | 500105 | 02/19/2014 | $ 4,705.00 |
| 02/07/2014 | 500195 | 02/19/2014 | $ 3,184.00 |
| 08/12/2015 | 508228 | 08/14/2015 | $ 11,630.00 |
| 12/25/2015 | 510800 | 12/30/2015 | $ 4,002.45 |
| 09/30/2016 | 517025 | 10/03/2016 | $ 912.00 |
| | | TOTAL | $ 40,261.45 |

        u.    In addition to the kickback payment described above in Paragraph 10(h), the defendant received the following kickback payments from Company B within the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 10(m)-(s), which the defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois, in the name of MGAB13:

11

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 04/18/2014 | 053439 | 04/28/2014 | $ 7,397.50 |
| 04/22/2014 | 053440 | 04/28/2014 | $ 2,250.00 |
| 12/05/2014 | 054541 | 12/18/2014 | $ 7,500.00 |
| 12/10/2014 | 054558 | 12/18/2014 | $ 3,125.00 |
| 01/28/2016 | 056511 | 02/01/2016 | $ 6,308.06 |
| 04/12/2016 | 056874 | 05/02/2016 | $ 9,305.50 |
| 09/29/2016 | 057693 | 10/05/2016 | $ 3,672.00 |
| 10/09/2017 | 059725 | 10/16/2017 | $ 2,930.30 |
|  |  | TOTAL | $ 42,488.36 |

v.    The defendant additionally received the following kickback payments from Company G within the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 10(m)-(s), which the defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois, in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 08/19/2013 | 24410 | 09/03/2013 | $ 1,562.00 |
| 04/17/2014 | 26195 | 04/28/2014 | $ 892.00 |
| 03/11/2015 | 028545 | 05/18/2015 | $ 3,360.00 |
| 03/17/2015 | 028563 | 05/18/2015 | $ 3,000.00 |
| XX/XX/2015 | 028679 | 05/18/2015 | $ 3,000.00 |
| 04/07/2015 | 028730 | 05/18/2015 | $ 3,000.00 |
| 04/09/2015 | 028751 | 07/16/2015 | $ 6,000.00 |
| 05/25/2016 | 031808 | 05/31/2016 | $ 2,144.00 |
|  |  | TOTAL | $ 22,958.00 |

w.    The defendant additionally received the following kickback payment from Company H during the conspiracy period, made payable to MGAB13 to conceal and disguise the nature, location, source, ownership, and control of the

12

proceeds of the specified unlawful activity described above in Paragraphs 10(m)-(s) which defendant subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust in Roselle, Illinois, in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 01/29/2014 | 45487 | 02/03/2014 | $    4,000.00 |
| 09/05/2014 | 46863 | 09/12/2014 | $    2,130.00 |
| | | TOTAL | $    6,130.00 |

## Elements of the Offenses

11.    The elements of the charged offense of bid rigging are that:

a.    the conspiracy described in the Information existed at or about the time alleged;

b.    the defendant knowingly became a member of the conspiracy; and

c.    the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

12.    The elements of the charged offense of conspiracy to commit money laundering are that:

a.    the conspiracy described in the Information existed at or about the time alleged;

b.    the defendant knowingly became a member of the conspiracy; and

c.    the conspiracy described in the Information involved conducting financial transactions, which involved the proceeds of specified unlawful activities, and these transactions were designed in whole and in part to conceal and disguise

13

the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities.

## Maximum Statutory Penalties

13. The defendant understands that the bid rigging charge, Count One of the Information, to which he is pleading guilty carries the following statutory penalties:

     a. A maximum sentence of 10 years' imprisonment, pursuant to 15 U.S.C. § 1;

     b. A maximum fine of $1 million, or twice the gross pecuniary gain the conspirators derived from the offense, or twice the gross pecuniary loss resulting from the offense, whichever is greatest, pursuant to 15 U.S.C. § 1 and 18 U.S.C. § 3571(b) and (d); and

     c. A term of supervised release of three years following any term of imprisonment, pursuant to 18 U.S.C. §§ 3559(a)(3), 3583(b)(2) and U.S.S.G. § 5D1.2(a)(2). If the defendant violates any condition of supervised release, the defendant could be required to serve up to two years in prison, pursuant to 18 U.S.C. § 3583(e)(3).

14. The defendant understands that the money laundering charge, Count Two of the Information, to which he is pleading guilty carries the following statutory penalties:

     a. A maximum sentence of 20 years' imprisonment, pursuant to 18 U.S.C. § 1956(a)(1) and (h);

b. A maximum fine of $500,000, or twice the value of the property involved in the money laundering transactions, whichever is greater, pursuant to 18 U.S.C. § 1956(a)(1) and (h); and

c. A term of supervised release of three years following any term of imprisonment, pursuant to 18 U.S.C. §§ 3559(a)(3), 3583(b)(2), and U.S.S.G. § 5D1.2(a). If the defendant violates any condition of supervised release, the defendant could be required to serve up to two years in prison, pursuant to 18 U.S.C. § 3583(e)(3).

15. In addition, the defendant understands that:

a. Pursuant to U.S.S.G. § 5E1.1 or 18 U.S.C. § 3663(a)(3) or 3583(d), the Court may order him to pay restitution to the victims of the offense; and

b. Pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the defendant to pay a $100.00 special assessment upon conviction for each of the charged crimes.

### Sentencing Guidelines Calculations

16. The defendant understands that:

a. The Sentencing Guidelines are advisory, not mandatory, but that the Court must consider—in determining and imposing a sentence—the Guidelines Manual in effect on the date of sentencing, unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed.

b. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing a sentence.

c. The Court will make Guidelines determinations by applying a standard of preponderance of the evidence. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

17. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. There is no *ex post facto* issue under the November 2018 Guidelines Manual.

b. **Offense Level Calculations for Count One: Bid Rigging**

i. The base offense level for the defendant's antitrust crime is 12, pursuant to U.S.S.G. § 2R1.1(a).

ii. Because the conduct involved the defendant's participation in an agreement to submit non-competitive bids, the base offense level is increased by one level, pursuant to U.S.S.G. § 2R1.1(b)(1).

iii. The defendant was a manager or supervisor of the criminal activity that is the subject of this Plea Agreement, and that criminal activity involved five or more participants. Therefore, the defendant's offense level is increased by an additional three levels, pursuant to U.S.S.G. § 3B1.1(b).

16

iv.    Defendant's total offense level, before any adjustments, for Count One is 16.

   **c.    Offense Level Calculations for Count Two: Money Laundering**

    i.    Pursuant to USSG § 2S1.1(a)(1), the base offense level is the offense level from the underlying offense from the laundered funds were derived, defendant's commission of wire fraud in violation of 18 U.S.C. §§ 1343 & 1346. Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level for wire fraud is 6.

    ii.    The base offense level is increased by an additional 8 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(E) because the value of the laundered funds was more than $95,000 but less than $150,000.

    iii.    The offense level is increased by 2 levels because defendant was convicted under 18 U.S.C. § 1956, pursuant to USSG § 2S1.1(b)(2)(B).

    iv.    The base offense level is increased by an additional 2 levels pursuant to U.S.S.G. § 2S1.1(b)(3) because the offense involved sophisticated laundering.

    v.    The defendant was a manager or supervisor of the criminal activity that is the subject of this Plea Agreement, and that criminal activity involved five or more participants. Therefore, the defendant's offense level is increased by an additional three levels, pursuant to U.S.S.G. § 3B1.1(b).

    vi.    Defendant's total offense level, before any adjustments, for Count Two is 21.

d.    **Timely Acceptance of Responsibility.**

i.    The defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the Antitrust Division and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

ii.    In accord with U.S.S.G. § 3E1.1(b), the defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by U.S.S.G. § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to its determination whether the defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

e.    **Grouping Analysis.**

i.    The parties agree to recommend that, pursuant to U.S.S.G. § 3D1.2, Counts One and Two group because they involve substantially the same harm. The parties make this recommendation in part because the offense levels for

18

counts one and two are determined largely on the basis of the total amount of harm or loss, U.S.S.G. § 3D1.2(d).

        ii.      Pursuant to U.S.S.G. § 3D1.3(b), in the case of counts grouped together pursuant to § 3D1.2(d), the offense guideline that produces the highest offense level should be used when the counts involve offenses of the same general type to which different guidelines apply.

        iii.      Under § 2R1.1, the defendant's final offense level for Count One is 13. Under § 2S1.1, the defendant's final offense level for Count Two is 18. Therefore, pursuant to U.S.S.G. § 3D1.3(b), § 2S1.1 of the Guidelines determines the defendant's offense level.

        f.      **Criminal History Category.** Based on the facts now known to the government, the defendant's criminal history points equal zero and the defendant's criminal history category is I.

        g.      **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 18. Combined with the anticipated criminal history category of I, the anticipated advisory Sentencing Guidelines range is 27 to 33 months' imprisonment, in addition to any supervised release the Court may impose. The defendant's fine is determined by U.S.S.G. § 5E1.2, which prescribes a fine range from $10,000 to $100,000 in addition to any restitution the Court may impose.

        18.    The defendant and his attorney and the government expressly acknowledge that while none of the Guidelines calculations set forth above are

binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain components of those calculations— specifically, those set forth above in Paragraph 17—are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in Paragraph 17.

### Sentencing Agreement

19.     Pursuant to Fed. R. Crim. P. 11(c)(1)(B) and subject to the full, truthful, and continuing cooperation of the defendant, as defined in Attachment A to this Plea Agreement, the United States agrees that it will recommend, as the appropriate disposition of this case, that the Court impose a sentence requiring the defendant to pay to the United States a criminal fine of $10,000 payable in full before the 15th day after the date of judgment, a period of imprisonment of 16 months, and no order of restitution (the "Recommended Sentence"). The defendant is free to argue for a lower sentence.

20.     In arguing for a lower sentence, the defendant is free to ask the Court to consider the factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence; the defendant understands that the United States may oppose the defendant's sentencing recommendation based on those factors, including any sentence that does not include a term of imprisonment. The parties agree that there exists no aggravating or mitigating circumstance of any kind, or to any degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. § 5K2.0. The defendant understands that the Court will order the defendant to pay a

$100 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A) for each offense, in addition to any fine imposed.

21.    The United States and the defendant agree that the applicable Guidelines imprisonment range exceeds the term of imprisonment contained in the Recommended Sentence set out in Paragraph 19. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Attachment A to this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's cooperation and his commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct. If the government determines that the defendant has continued to provide full and truthful cooperation as required by this Plea Agreement, then the government shall move the Court, pursuant to U.S.S.G. § 5K1.1, to depart downward from the low end of the applicable Guidelines range, and it shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 60 percent of the low end of the applicable Guidelines range—specifically, a term of imprisonment of 16 months, as set forth in Paragraph 19. The defendant understands that the decision to depart from the applicable Guidelines range rests solely with the Court.

22.    If the government does not move the Court, pursuant to U.S.S.G. § 5K1.1, to depart from the applicable Guidelines range, as set forth above, Paragraphs 19, 20, and 21 of this Plea Agreement will be inoperative, both parties

shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to U.S.S.G. § 5K1.1. The defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to U.S.S.G. § 5K1.1.

23.     To enable the Court to have the benefit of all relevant sentencing information, the United States may request, and the defendant will not oppose, that sentencing be postponed until his cooperation is complete.

24.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the Recommended Sentence provided in Paragraph 19 of this Plea Agreement. The defendant understands that, as provided in Fed. R. Crim. P. 11(c)(3)(B), if the Court does not impose the Recommended Sentence contained in this Plea Agreement, he nevertheless has no right to withdraw his plea of guilty.

### Government's Agreement

25.     Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Attachment A to this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of sentence, the United States agrees that it will not bring further criminal charges against the defendant for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere. The United States additionally agrees that it will

22

not bring further criminal charges against the defendant for any act or offense committed before the date of signature of this Plea Agreement that was undertaken to deprive the defendant's employer of its right to the defendant's honest services, and any related efforts to conceal the source of the kickback funds that the defendant received (the "Relevant Offenses"). The nonprosecution terms of this paragraph do not apply to:

      a.    any acts of perjury or subornation of perjury, in violation of 18 U.S.C. §§ 1621–22; making a false statement or declaration, in violation of 18 U.S.C. §§ 1001, 1623; obstruction of justice, in violation of 18 U.S.C. § 1503 *et seq.*; contempt, in violation of 18 U.S.C. §§ 401–02; or conspiracy to commit such offenses;

      b.    civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; or

      c.    any crime of violence.

### Representation by Counsel

26.     The defendant has reviewed all legal and factual aspects of this case with his attorney and is fully satisfied with his attorney's legal representation. The defendant has thoroughly reviewed this Plea Agreement with his attorney and has received satisfactory explanations from his attorney concerning each paragraph of this Plea Agreement and alternatives available to the defendant other than entering into this Plea Agreement. After conferring with his attorney and considering all available alternatives, the defendant has made a knowing and voluntary decision to enter into this Plea Agreement.

### Voluntary Plea

27.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement.  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

### Violation of Plea Agreement

28.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant has failed to provide full, truthful, and continuing cooperation, as defined in Attachment A to this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and also may notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this Paragraph 28), and the defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six months after the date

the United States gave notice of its intent to void its obligations under this Plea Agreement.

29.     The defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him.    In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

### Entirety of Agreement

30.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

31.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

32.     A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement.   Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

AGREED THIS DATE: _____March 5, 2020_____

JASON C. TURNER
CHESTER CHOI
JILLIAN ROGOWSKI
Trial Attorneys

DANIEL W. GLAD
Assistant Chief
U.S. Department of Justice
Antitrust Division
209 South LaSalle Street
Suite 600
Chicago, IL  60604
Tel: (312) 984-7200

CARTER BRETT
Defendant

GREGG L. SMITH
Attorney for Defendant