UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 CR 80-1 |
| | ) | |
| CARTER BRETT, | ) | The Honorable |
| | ) | Thomas M. Durkin, |
| Defendant. | ) | Presiding Judge |

### DEFENDANT CARTER BRETT'S SENTENCING MEMORANDUM

Now comes the defendant, CARTER BRETT, by and through his attorney, GREGG L. SMITH, and respectfully requests that this Honorable Court, in light of *Gall v. United States*, 552 U.S. 38 (2007) and the factors set forth in 18 U.S.C. § 3553(a), sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary to comply with the purposes of sentencing. In support, the following is offered:

### Introduction

On February 5, 2020, a two-count information charged Carter Brett with conspiring to rig bids related to flooring services and products between 2013 and June of 2017, in violation of 18 U.S.C. § 1 (Count One); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count Two). After the scheme ended and long before he was charged by the Information, Carter Brett sought treatment for his alcohol and drug abuse, and cooperated with investigators and provided significant and useful cooperation to the Government. On March 5, 2020, just four weeks after he was charged in the Information, Carter Brett entered a plea of guilty to both counts. By the time Mr. Brett comes before this Honorable Court for sentencing it will have been almost

1

six years since the scheme ended. He has spent much of this time reflecting on the decisions he has made leading to his arrest, being charged, upcoming sentencing, and his future.

Mr. Brett accepts responsibility for his criminal behavior. He was clearly wrong and offers no excuses. Rather, he offers himself to the mercy of this Court, to take into consideration not only the actions that brought him before this Court, but also his conduct following his arrest and efforts to make amends.

Considering both the nature and circumstances of the instant offense, his personal history and characteristics, the absence of any prior criminal history, and considerations of recidivism and specific deterrence, Mr. Brett respectfully asks this Honorable Court to sentence him to probation or home confinement, which would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## Sentencing Considerations Pursuant to 18 U.S.C. § 3553(a) Supporting a Below-Guidelines Sentence

This Court maintains unfettered discretion to fashion a sentence that punishes the offender, as opposed to just the crime. *Pepper v. United States*, 562 U.S. 476, 488 (2011); *United States v. Ramirez-Mendoza*, 683 F.3d 771, 777 (7th Cir. 2012). After first calculating the applicable sentencing range, district courts are then tasked with imposing a sentence that is reasonable under 18 U.S.C. § 3553(a). However, because sentencing guidelines ranges are not to be presumed reasonable, this Court must consider whether they actually conform to the particular circumstances of the case. *Nelson v. United States*, 555 U.S. 350 (2009) (*per curiam*); *United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005). So long as the selected sentence is "rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency[,]" a below guidelines sentence is appropriate. *United States v. Wachowiak*,

496 F.3d 744, 745 (7th Cir. 2007).

In fashioning a sentence that is sufficient but not greater than necessary, Mr. Brett respectfully asks this Court to consider the nature and circumstances of the offense, his personal history and characteristics, his extraordinary acceptance of responsibility, his ongoing efforts at redressing the harm caused by his misconduct and his substantial cooperation.

    **a.**    **Advisory Guideline Range**

As the Seventh Circuit has formally established, a sentencing court's inquiry begins by calculating the defendant's advisory Guideline range. *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). According to the Plea Agreement and PSR, Mr. Brett's advisory Guideline sentence was calculated as follows:

<u>Count One</u>
| | |
|---|---:|
| Base Offense Level §2R1.1(a) | 12 |
| Non-Competitive Bids §2R1.1(b)(1) | 1 |
| Role in the Offense Mgt/Supervisor §3B1.1(b) | 3 |
| Acceptance of Responsibility §3E1.1(a) and (b) | - 3 |
| Total Offense Level | 13 |

<u>Count Two</u>
| | |
|---|---:|
| Base Offense Level §2S1.1(a) and §2B1.1(a)(2) | 6 |
| Value of Laundered Funds less than $150K §2B1.1(b)(1)(E) | 8 |
| Involves § 1956 §2S1.1(b)(2)(B) | 2 |
| Sophisticated Laundering §2S1.1(b)(3) | 2 |
| Role in the Offense Mgt/Supervisor §3B1.1(b) | 3 |
| Acceptance of Responsibility §3E1.1(a) and (b) | - 3 |
| Total Offense Level | 18 |

The PSR reflects an additional one-level increase based upon grouping of counts one and two, for a Total Offense Level of 19. (PSR ¶¶ 43 and 48)

The Mr. Brett has zero criminal history points, placing him in criminal history Category I. (PSR ¶ 56)

The Plea Agreement indicates that the government has agreed recommend a sentence 16 months imprisonment, while Mr. Brett "is free to argue for a lower sentence." (Plea Agreement ¶¶ 19 and 21) According to the Plea Agreement, the government will make known to the Court the extent of Mr. Brett's cooperation. In the government's version of the offense, the government described Mr. Brett's cooperation as follows:

> Brett has significantly assisted the government's investigation into bid rigging and money laundering in the Chicago commercial flooring industry. Brett's assistance was timely, as he began cooperating with the government's investigation in February 2019, before any other target of investigation was charged. The information he provided was truthful, complete, and reliable, as other witnesses and the documentary record consistently corroborated Brett's account of his conduct. Brett's assistance was extensive as well, as he was interviewed multiple times, turned over key evidence to the government, and stood prepared to testify against any of his coconspirators. Brett's assistance was particularly useful in building the government's case against Mr. David's, as Brett would have been a key trial witness regarding Mr. David's involvement in the MVCC bid-rotation scheme and its payment of kickbacks to MGAB13. Ultimately, Mr. David's pleaded guilty to one count of bid rigging and one count of money laundering. *See United States v. Mr. David's Flooring International, Ltd.,* 21-cr-517 (N.D. Ill.). Thus, Brett provided significant and useful cooperation to the government's investigation and resulting prosecutions.

Mr. Brett respectfully asks this Court to exercise its discretion, in accordance with the § 3553(a) factors, *Pepper* and *Gall*, and sentence him to probation or home confinement.[1]

b.  **Nature and Circumstances of the Offense**

The extent of the offense conduct has been accurately set forth in the Presentence Investigation Report and the Government's Sentencing Memorandum. We anticipate no further aggravating matters will be introduced.

---

[1] The Plea Agreement provides that the government will recommend a sentence of imprisonment for 16 months, and that Mr. Brett "is free to argue for a lower sentence." (Plea Agreement ¶ 19)

Mr. Brett has long since embraced full responsibility for his actions through his early admission of guilt, his written plea agreement, and his complete and candid cooperation with the government.

### c. Personal History and Characteristics

Carter Brett was born in Arlington Heights and is currently 54 years old. He is one of two children born to Jean and Carol Brett. Jean worked in advertising sales, coached Carter's hockey team, and passed away in 1998 from cancer. (PSR ¶¶ 62 and 64) Carter's mother, Carol, is 84 years old and resides in Hawthorn Wood, Illinois. (PSR ¶ 62) Carter speaks with his mother on a daily basis and visits her every other day as her caretaker to assist her with household tasks. (PSR ¶ 66) Carter had a brother who struggled with alcoholism until he passed away in 2022. (PSR ¶¶ 62 and 64)

Carter married Whitney Tomlison in October 2001 and together they have three children: Macy, age 19 who is a student at Illinois State University; Audrey, age 18 who is a high school student; and Max, age 9. (PSR ¶ 68) Macy and Audrey are aware of their father's matter and pending sentencing, but nine-year-old Max is not. (PSR ¶ 71) Macy and Audrey are being treated with prescription medications for anxiety and depression. (PSR ¶ 71) Carter indicated to the probation officer that a period of imprisonment would "send the family into a state of turmoil, an untenable situation" (PSR ¶ 70)

Carter struggled with a two-headed demon (alcohol and drug abuse) since he was a teenager – as he began drinking alcohol when he was 15 at school parties, and using cocaine when he was 17. (PSR ¶ 84) While there was a "cooling off period" when Carter met his wife, Whitney, the abuse resumed when they moved to Barrington and met neighbors who drank alcohol and

frequently used cocaine. (PSR ¶ 85) At the time of the instant offense and continuing up until 2018, Carter was intoxicated five times per week and would not consume alcohol without using cocaine out of fear of "blacking out." (PSR ¶ 85)

While Section 5H1.4 states that drug or alcohol dependence or abuse ordinarily is not a reason for downward departure, post-offense rehabilitation is not only permitted, but strongly encouraged.[2]

In *Pepper v. United States,* 562 U.S. 476, 481 (2011), the defendant pleaded guilty to conspiring to distribute over 500 grams of methamphetamine, resulting in an advisory sentencing range of 97 to 121 months. The government made a 5K1 motion for Pepper's substantial assistance and recommended a 15% downward departure. *Id.* The District Court, however, sentenced Pepper to a 24-month prison term, resulting in an approximately 75% downward departure from the low end of the Guidelines range. *Id.* The government appealed Pepper's and in 2005 the Eighth Circuit reversed and remanded for resentencing in light of the Supreme Court's decision in *Booker.* By the time the District Court conducted a resentencing hearing in 2006, Pepper had completed a drug treatment program while in prison, and since his release from prison, obtained employment within a few weeks, enrolled in a community college as a full-time student and had earned A's in all his classes in the prior semester and continued to work part-time while attending school. *Id.* Pepper was also in compliance with all the conditions of his supervised release and Pepper's father testified that he had virtually no contact with his son during the five-year period leading up to his arrest, but had re-established a relationship with his son since his

---

[2] The Plea Agreement provides that the "parties agree that there exists no aggravating or mitigating circumstances of any kind, or to any degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. § 5K2.0." (Plea Agreement ¶ 20)  While Mr. Brett will honor and fully abide by the Plea Agreement, it is urged that this Court has the duty and discretion to give appropriate consideration to Carter Brett's post-offense rehabilitation. *See Pepper v. United States,* 562 U.S. 476 (2011).

son was released. *Id.* at 482-483. The District Court considered and pointed to Pepper's post-offense rehabilitation to impose the same 24-month sentence. After another appeal to the Eighth Circuit by the government, the United States Supreme Court granted certiorari.

In upholding the District Court's consideration of Pepper's post-offense rehabilitation, the Supreme Court observed:

> This Court has long recognized that sentencing judges "exercise wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant – if not essential – to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York,* 337 U.S. 241, 246-247 (1949). Congress codified this principle at 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct," and at § 3553(a), which sets forth certain factors that sentencing courts must consider, including "the history and characteristics of the defendant," § 3553(a)(1).
> *Pepper,* 562 U.S. at 480.
>
> \* \* \* \* \*
>
> Consistent with this principle, we have observed that "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams,* 337 U.S.at 246. . . . Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant." *Wasman v. United States,* 468 U.S. 468, 559, 564 (1984).
> *Pepper,* 562 U.S. at 488.
>
> \* \* \* \* \*
>
> In addition, evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of postsentencing rehabilitation may plainly be relevant to "the history and characteristics of the defendant." § 3553(a)(1). Such evidence may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing

set forth in § 3553(a)(2) – in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," …. Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2).
*Pepper,* 562 U.S. at 491.

     \*  \*  \*  \*  \*

As the original sentencing judge recognized, the extensive evidence of Pepper's rehabilitation since his initial sentencing is clearly relevant to the selection of an appropriate sentence in this case. Most fundamentally, evidence of Pepper's conduct since his release from custody in June 2005 provides the most up-to-date picture of Pepper's "history and characteristics." § 3553(a)(1); *see United States v. Bryson,* 229 F.3d 425, 426 (2d Cir. 2000)("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing"). … By the time of his second resentencing in 2009, Pepper had been drug-free for nearly five years, had attended college and achieved high grades, was a top employee at his job slated for a promotion, had re-established a relationship with his father, and was married and supporting his wife's daughter.  There is no question that this evidence of Pepper's conduct since his initial sentencing constitutes a critical part of the "history and characteristics" of a defendant that Congress intended sentencing courts to consider. § 3553(a)

Pepper's postsentencing conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence. *See* §§ 3553(a)(2)(B)-(C)))…. Finally, Pepper's exemplary postsentencing conduct may be taken as the most accurate indicator of "his present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon him." *Ashe,* 302 U.S. at 55.  Accordingly, evidence of Pepper's postsentencing rehabilitation bears directly on the District Court's overarching duty to "impose a sentence sufficient, but not greater than necessary" to serve the purposes of sentencing. § 3553(a)
*Pepper,* 562 U.S. at 492-493.

  Another example is *United States v. Lange,* 241 F.Supp.2d 907 (E.D. Wisc. 2000).  In *Lange,* the 58-year-old defendant with no criminal history points began using cocaine as a means

for coping with the death of his father. *Lange,* 241 F.Supp.2d at 909. Over the next five years, Lange began using cocaine more often, progressed to smoking crack cocaine, first weekly and then daily. *Id.* Lange would go on binges and suffered blackouts. *Id.* Lange began selling small quantities of crack cocaine out of his home, and was arrested after several sales to a confidential informant and undercover officer. *Id.* Lange was released to a treatment program and after some early problems, made a remarkable transition. *Id.*

> Judge Adelman began by acknowledging:
>
>> Sincere efforts at drug and alcohol treatment can provide a basis for a downward departure. *See, e.g., Newlon,* 212 F.3d at 424; *Cornielle,* 171 F.3d at 754 (citing *Maier,* 975 F.2d at 948); *United States v. Whitaker,* 152 F.3d 1238, 1239-41 (10h Cir. 1998). … Defendant's efforts also exceed those of the defendant in *Maier,* perhaps the leading case on this type of departure. The defendant's efforts at rehabilitation there were described as "uneven," and she failed drug tests administered by pre-trial services. 975 F.2d at 945. However, based on her genuine desire to rehabilitate herself and continuing efforts in that regard, the district judge granted a departure and the court of appeals affirmed. *Id.* at 948-49. Defendant Lange has passed his drug tests and his efforts have been exemplary since the commencement of his second stay at Genesis….
>>
>> Second, defendant has been fully compliant with the conditions of his release since Judge Callahan gave him a second chance at Genesis. Although departures should not be granted just because a defendant does what is expected and required of him while awaiting trial, this is a relevant factor when considering a departure on this basis. (Citation omitted.) Particularly when complying with the conditions of release means fighting a powerful addiction, courts should take notice.
>>
>> Third, defendant appears to be making genuine efforts to reconnect with his family. His children have noted the dramatic change they have seen in their father over the past six months. (Citation omitted). (The change is also evident to the court.) I consider family support a crucial component to rehabilitation, and defendant's efforts to re-connect with his family bode well for his future prospects. (Citations omitted.) …

9

> … In the present case, defendant Lange has done even better than the defendant in *Kane,* because he has been fully compliant with the conditions of release since completing treatment. *See also United States v. Wilke,* 130 F.Supp.2d 222, 240-41 (D. Mass. 2001) (departing where, after a decade of severe alcohol and drug abuse, defendant obtained counseling, remained drug-free, and re-established meaningful personal and family relationships); *United States v. Hernandez,* No. 98-CR-1316, 2001 U.S. Dist. LEXIS 897, at *3 (S.D.N.Y. Feb. 2, 2001) (departing where defendant entered treatment program after her arrest, submitted negative drug tests, and reunited with her family).
> *Lange,* 241 F.Supp.2d at 911-912.

Here, the PSR addresses the three relevant factors in *Pepper* and *Lange:* (a) overcoming alcohol and drug abuse; (b) compliance with conditions of his pre-trial release; and (c) re-connecting with his family.

Alcohol and Drug Rehabilitation

The instant offense took place between 2013 and 2017. (PSR ¶ 2) The PSR indicates that, "upon moving to Barrington and meeting neighbors who drank alcohol (and used cocaine) frequently, he began drinking alcohol multiple times per week. By 2018, the defendant was reportedly intoxicated five times per week, and would not consume alcohol without using cocaine, as he was afraid of 'blacking out.'" (PSR ¶ 85)[3] The PSR also indicates that, "[i] the last 'several years' before he ceased cocaine use in 2018, the defendant was reportedly using the drug a 'few times' per week." (PSR ¶ 84) However, the PSR reports that Carter "achieved sobriety in 2018, after his wife stated that she did not, in his words, 'sign up for this,' and threatened to leave their marriage if he did not change his behavior." (PSR ¶ 86)

When confronted by his wife, Carter did not deny, deflect, or refuse to acknowledge his

---

[3] It appears that Carter used the proceeds of the scheme to fuel his alcohol and cocaine abuse. This is borne out by the PSR where, according to Agent DeMola, Carter "did not use any of the money for extravagant purchases, rather, he used it for regular monthly expenses." (PSR ¶ 21)

10

substance abuse, as is often the case. Rather, as the Probation Officer reports, Carter "ceased drinking alcohol and using cocaine on his own, without any professional substance abuse treatment. He did begin attending Alcoholics Anonymous (AA) meetings, and stated he currently attends three meetings per week." (PSR ¶ 86) Mrs. Brett describes her husband's history of alcohol abuse as a "huge battle," and that Carter "has been sober for five years, has been active in the AA program, including leading meetings and serving as a mentor to others." (PSR ¶ 88)

Post-Offense Conduct

The scheme ended on June 22, 2017. (PSR ¶ 2) The PSR indicates that, "[n]o violations of bond have been reported by pretrial services," and that Carter has not engaged in any problematic activity while on bond. (PSR ¶ 6) As noted above, Carter has also attempted to atone for his misconduct through his "extensive assistance" which was "truthful, complete, and reliable," and culminated in the prosecution of others involved in the conspiracy, and has resulted in the government agreeing to move for a reduction pursuant to § 5K1.1 for his "significant and useful cooperation."

After losing his job at Mohawk Industries on March 5, 2020, where he had been employed for 22 years, the PSR reflects that Carter has been gainfully employed since May of 2020. (PSR ¶¶ 93-96)

Marital and Family Commitment

It is readily apparent that Carter and Whitney bared their souls when speaking with the probation officer concerning their marriage and commitment to each other. Whitney indicated that Carter has had a "huge battle" with alcohol abuse, and that, in Carter's words, he was "living a miserable existence, a miserable existence because of the addiction." (PSR ¶¶ 87-88) Carter

"achieved sobriety in 2018, after his wife stated that she did not, in his words, 'sign up for this,' and threatened to leave their marriage if he did not change his behavior." (PSR ¶ 86) Carter ceased drinking and using cocaine and has been attending AA meetings since. Carter and Whitney enjoy a good relationship and their marriage "is stronger because of [their] need to support one another." (PSR ¶ 69) In speaking with Whitney, the probation officer wrote, "Mrs. Brett added [Carter] 'feels guilty for putting me and our family in this situation,' and further noted that he agreed to assist the government to right the wrongs he committed. Furthermore, Mrs. Brett expressed complete love and support for [Carter] going forward, noting such is 'because of the change' in the past five years regarding his alcohol abuse. She added 'I can't leave that, not after he's changed. [I] could not be more proud of that." (PSR ¶ 72)

Carter is also the caregiver for his 84-year-old mother, speaks with her on a daily basis, and visits her every other day to assist his mother with her household tasks. (PSR ¶¶ 62, 66)

The consideration of this symphony of mitigation in support of Carter's request to be sentenced to probation or home confinement is precisely what the Supreme Court considered and encouraged in *Pepper*. It must be remembered that the Supreme Court emphasized that sentencing courts are "to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant" and it's a court's duty to "always sentence the defendant as he stands before the court on the day of sentencing," and "impose a sentence sufficient, but not greater than necessary" to serve the purposes of sentencing. *Pepper,* 562 U.S. at 488, 492-93.

      d.    **Deterrence, Just Punishment, and Other Policy Considerations**

This Court is inherently tasked with an incredibly difficult decision as to what a just

punishment is for any given defendant. While the sentencing guidelines work as a benchmark in sentencing, on their face, they fail to account in any way for the characteristics of Carter Brett and the extraordinary actions he has undertaken to remedy his wrongdoing through his post-offense conduct. In both *Pepper* and *Gall,* the Supreme Court expressed even greater weight for individuals whose rehabilitation is "self-motivated." *Pepper,* 562 U.S. at 492 quoting *Gall,* 552 U.S. at 59 ("Gall's self-motivated rehabilitation … lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts.").

Carter Brett is a first time non-violent offender who poses absolutely no threat or risk of re-offending in light of his conduct over the nearly six years after the scheme ended. An appropriate sentence in this case is probation.

The goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553(a)(2). Through this "parsimony provision," the Court is to impose a sentence that is the *minimum* necessary to accomplish those goals set forth in paragraph (2). As a first-time felony offender who has accepted personal responsibility in the fullest sense of that phrase, whose crime, although serious, was non-violent in nature, whose cooperation, ongoing for years provided significant results, a non-custodial sentence, would meet the goals of sentencing. *See* 28 U.S.C. § 994(j), *amended (this section unaffected)* by PL 11-273, October 12, 2010, 124 Stat. 2858 (probation is an appropriate sentence for "cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," reserving imprisonment for "a person convicted of a crime of violence that result[ed] in serious bodily injury").

As to general deterrence, a message has already been sent to the community at large that bid rigging and money laundering will not be tolerated and will be significantly punished. Mr. Brett's conduct in this case has already resulted in certain punishment, a federal felony conviction, which will affect him for the rest of his life. A non-custodial sentence sends a message that our system can be both just and merciful, encouraging those similarly situated, to choose candor and truth over denial and deception.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court affirmed the district court's sentence of 36 months probation, despite an advisory guideline range of 30 to 37 months, based, in part, on the defendant's lack of criminal history and self-rehabilitation. *Gall*, 128 S.Ct at 593. The Supreme Court rejected the Eighth Circuit's conclusion that a sentence of probation was inadequate and beyond the realm of available sentencing choices and emphasized the fact that a sentence of probation is in fact punishment and is not merely "an act of leniency." *Gall*, 128 S.Ct. at 594-96.

While clearly custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders sentenced to probation are nonetheless subject to conditions which restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587 (2001) (inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled). For example, probationers may not leave the judicial district, move, or change jobs without notifying, and, in some instances, receiving permission from their probation officer or the court. *Id.* In addition, they must report regularly to their probation officers, permit unannounced visits to their home, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. *See* U.S.S.G. § 5B1.3. Furthermore,

most probationers are also subject to individual "special conditions" imposed by the court. Finally, a probationer always faces the possibility of harsh consequences if a condition of his probationary term is violated. *See* Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957) (probation is not merely letting an offender off easily).

In addition, as the Court is more aware of than most in society, a federal conviction is a stigma that blights a life forever and has serious and severe consequences on not just Mr. Brett, but also his family. Such punishment provides a permanent reminder of Carter's wrong doing, and, for Carter, carries a high degree of guilt and shame.

Thus, given the absence of criminal history, coupled with Mr. Brett's substantial assistance to the government, his self-rehabilitation gainful employment and the strong marital and family commitment, we respectfully request that he be sentenced to probation or, in the alternative, home confinement.

## CONCLUSION

This Court maintains significant discretion to not only craft a reasonable, appropriate sentence pursuant to the Guidelines, but to consider the totality of circumstances surrounding the individual involved, including, among other factors, the nature and circumstances surrounding Mr. Brett's conviction, his personal history and characteristics, as well as the long-standing collateral consequences the current matter will have on him. The foregoing considerations outlined in this submission show only a small portion of who Carter Brett really is: a devoted and dedicated husband, father, and son. The conduct that placed him before this Court was not driven by any sort of evil malice. It has already, and will continue, to adversely affect the rest of his life. In

15

sentencing Mr. Brett to probation, this Court would accomplish the goals of sentencing by punishing the individual – not the crime – to a sentence that is sufficient, but not greater than necessary to comport with all of the sentencing considerations contained in 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Gregg L. Smith
GREGG L. SMITH
Attorney for Carter Brett

Gregg L. Smith
205 West Randolph Street
Suite 1040
Chicago, IL 60606
(312) 629-1778

## CERTIFICATE OF SERVICE

I, Gregg L. Smith, the attorney for Defendant Carter Brett, hereby certify that I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

/s/ Gregg L. Smith
GREGG L. SMITH
Attorney for Carter Brett

Gregg L. Smith
205 West Randolph Street
Suite 1040
Chicago, IL 60606
(312) 629-1778