**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 CR 80-1 |
| | ) | |
| CARTER BRETT, | ) | The Honorable |
| | ) | Thomas M. Durkin, |
| Defendant. | ) | Presiding Judge |

**DEFENDANT CARTER BRETT'S SENTENCING MEMORANDUM RESPONSE**

Now comes the defendant, CARTER BRETT, by and through his attorney, GREGG L. SMITH, and respectfully files this response to the Government's sentencing memorandum. (Dkt. No. 65) By way of response, the following is offered:

Grouping Counts One and Two

Mr. Brett agrees with the Government's assessment that Counts One and Two should be grouped, pursuant to U.S.S.G. § 3D1.2, because they involve substantially the same harm. (Gov. Sentencing Memo, page 7) In addition, this is consistent with Paragraph 17(e) of the Plea Agreement where the parties agreed to recommend that the counts be grouped together.

Greed Was Not The Motivating Factor

A careful review demonstrates that Mr. Brett's behavior was not motivated by greed and some insatiable desire to lead a lavish lifestyle, take extravagant vacations, or own multiple parcels of high-end real estate, boats, luxury cars and the like. Rather, as the PSR reflects, Mr. Brett and his wife have lived in the same modest home for over 20 years, and jointly own two Subaru cars. (PSR ¶¶ 73 and 100)[1]

---

[1] It appears that Carter used the proceeds of the scheme to fuel his alcohol and cocaine abuse. This is borne out by

1

While Carter had an excellent relationship with his parents as a child and was raised in a stable, middle-class home, his childhood was filled with problems. Sadly, Carter struggled with a two-headed demon (alcohol and drug abuse) since he was a teenager – as he began drinking alcohol when he was 15 at school parties, and using cocaine when he was 17. (PSR ¶ 84) While there was a "cooling off period" when Carter met his wife, Whitney, the abuse resumed when they moved to Barrington and met neighbors who drank alcohol and frequently used cocaine. (PSR ¶ 85) At the time of the instant offense and continuing up until 2018, Carter was intoxicated five times per week and would not consume alcohol without using cocaine out of fear of "blacking out." (PSR ¶ 85)

The instant offense took place between 2013 and 2017. (PSR ¶ 2) The PSR indicates that, "upon moving to Barrington and meeting neighbors who drank alcohol (and used cocaine) frequently, he began drinking alcohol multiple times per week. The PSR also indicates that, "[i]n the last 'several years' before he ceased cocaine use in 2018, the defendant was reportedly using the drug a 'few times' per week." (PSR ¶ 84) However, the PSR reports that Carter "achieved sobriety in 2018, after his wife stated that she did not, in his words, 'sign up for this,' and threatened to leave their marriage if he did not change his behavior." (PSR ¶ 86)

When confronted by his wife, Carter did not deny, deflect, or refuse to acknowledge his substance abuse, as is often the case. Rather, as the Probation Officer reports, Carter "ceased drinking alcohol and using cocaine on his own, without any professional substance abuse treatment. He did begin attending Alcoholics Anonymous (AA) meetings, and stated he currently attends three meetings per week." (PSR ¶ 86) Mrs. Brett describes her husband's history of alcohol abuse as a "huge battle," and that Carter "has been sober for five years, has been active in

---

the PSR where, according to Agent DeMola, Carter "did not use any of the money for extravagant purchases, rather, he used it for regular monthly expenses." (PSR ¶ 21)

2

the AA program, including leading meetings and serving as a mentor to others." (PSR ¶ 88) It is readily apparent that Carter and Whitney bared their souls when speaking with the probation officer concerning their marriage and commitment to each other.

Mr. Brett accepts responsibility for his criminal behavior. He was clearly wrong and offers no excuses. Rather, he offers himself to the mercy of this Court, to take into consideration not only the actions that brought him before this Court, but also his conduct following his arrest and efforts to make amends.

Custodial Versus Non-Custodial Sentences

An appropriate sentence in this case is probation. Considering both the nature and circumstances of the instant offense, his personal history and characteristics, the absence of any prior criminal history, and considerations of recidivism and specific deterrence, Mr. Brett respectfully asks this Honorable Court to sentence him to probation or home confinement, which would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

The goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553(a)(2). Through this "parsimony provision," the Court is to impose a sentence that is the *minimum* necessary to accomplish those goals set forth in paragraph (2). As a first-time felony offender who has accepted personal responsibility in the fullest sense of that phrase, whose crime, although serious, was non-violent in nature, whose cooperation, ongoing for years provided significant results, a non-custodial sentence, would meet the goals of sentencing. *See* 28 U.S.C. § 994(j), *amended (this section unaffected)* by PL 11-273, October 12, 2010, 124 Stat. 2858 (probation is an appropriate sentence for "cases in which the defendant is a first offender who has not been convicted of a crime of

violence or an otherwise serious offense," reserving imprisonment for "a person convicted of a crime of violence that result[ed] in serious bodily injury").

As to general deterrence, a message has already been sent to the community at large that bid rigging and money laundering will not be tolerated and will be significantly punished. First, Mr. Brett lost his job with Mohawk Industries after 22 years as a result of this matter. In addition, Mr. Brett's conduct in this case has already resulted in certain punishment. First, Mr. Brett lost his job with Mohawk Industries after 22 years as a result of this matter. In addition, as this Court is well aware, a federal felony conviction will affect Mr. Brett for the rest of his life. A non-custodial sentence sends a message that our system can be both just and merciful, encouraging those similarly situated, to choose candor and truth over denial and deception.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court affirmed the district court's sentence of 36 months probation, despite an advisory guideline range of 30 to 37 months, based, in part, on the defendant's lack of criminal history and self-rehabilitation. *Gall*, 128 S.Ct at 593. The Supreme Court rejected the Eighth Circuit's conclusion that a sentence of probation was inadequate and beyond the realm of available sentencing choices and emphasized the fact that a sentence of probation is in fact punishment and is not merely "an act of leniency." *Gall*, 128 S.Ct. at 594-96.

While clearly custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders sentenced to probation are nonetheless subject to conditions which restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587 (2001) (inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled). For example, probationers may not leave the judicial

4

district, move, or change jobs without notifying, and, in some instances, receiving permission from their probation officer or the court. *Id.* In addition, they must report regularly to their probation officers, permit unannounced visits to their home, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. *See* U.S.S.G. § 5B1.3. Furthermore, most probationers are also subject to individual "special conditions" imposed by the court. Finally, a probationer always faces the possibility of harsh consequences if a condition of his probationary term is violated. *See* Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957) (probation is not merely letting an offender off easily).

Carter Brett is a first time non-violent offender who poses absolutely no threat or risk of re-offending in light of his conduct over the nearly six years after the scheme ended. In addition, the Government has acknowledged:

> First, Brett's assistance was immensely useful, as he was the first cooperator in the investigation to provide detailed information concerning the bid-rotation scheme at Victim 12 and the money-laundering scheme. Brett's assistance was particularly useful in building the government's case against Mr. David's, as Brett would have been a key trial witness regarding Mr. David's involvement in the bid-rotation scheme and its payment of kickbacks to Brett through MGAB13. Ultimately, Mr. David's pleaded guilty to one count of bid rigging and one count of money laundering. *See United States v. Mr. David's Flooring International, LLC,* No. 21-CR-517 (N.D. Ill.).
>
> Second, the information Brett provided was truthful, complete, and reliable, as other witnesses and the documentary record corroborated his account. In particular, Brett maintained paper records of the kickback checks deposited into MGAB13's bank account, which he quickly turned over to the government, and which assisted the government's efforts to verify this information.
>
> Third, Brett's cooperation was extensive. He was interviewed by the government on four occasions and was willing to testify against

5

>any of his coconspirators. Although the government never called Brett to testify, this result was largely because his co-conspirators elected to plead guilty, not due to any reluctance to testify or lack of cooperation on Brett's part.
>Finally, Brett's assistance was timely, as he began cooperating with the government's investigation in February 2019, before any other target of the investigation had been charged. By coming in early, Brett greatly accelerated the pace of the investigation, ensuring the government was able to charge his coconspirators within the statute of limitations.
>(Gov. Sentencing Memo, pages 10-11)

Thus, given the absence of criminal history, coupled with Mr. Brett's substantial assistance to the government, his self-rehabilitation gainful employment and the strong marital and family commitment, we respectfully request that he be sentenced to probation or, in the alternative, home confinement.

## CONCLUSION

This Court maintains significant discretion to not only craft a reasonable, appropriate sentence pursuant to the Guidelines, but to consider the totality of circumstances surrounding the individual involved, including, among other factors, the nature and circumstances surrounding Mr. Brett's conviction, his personal history and characteristics, as well as the long-standing collateral consequences the current matter will have on him. The foregoing considerations outlined in this submission show only a small portion of who Carter Brett really is: a devoted and dedicated husband, father, and son. The conduct that placed him before this Court was not driven by any sort of evil malice. It has already, and will continue, to adversely affect the rest of his life. In sentencing Mr. Brett to probation, this Court would accomplish the goals of sentencing by punishing the individual – not the crime – to a sentence that is sufficient, but not greater than necessary to comport with all of the sentencing considerations contained in 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Gregg L. Smith
GREGG L. SMITH
Attorney for Carter Brett

Gregg L. Smith
205 West Randolph Street
Suite 1700
Chicago, IL 60606
(312) 629-1778

# CERTIFICATE OF SERVICE

I, Gregg L. Smith, the attorney for Defendant Carter Brett, hereby certify that I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

/s/ Gregg L. Smith
GREGG L. SMITH
Attorney for Carter Brett

Gregg L. Smith
205 West Randolph Street
Suite 1700
Chicago, IL 60606
(312) 629-1778