**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20-CR-80 |
| v. | |
| CARTER BRETT | Judge Thomas M. Durkin |

**UNITED STATES'S SUPPLEMENTAL SENTENCING MEMORANDUM ON THE SENTENCING OF DEFENDANT'S COCONSPIRATORS**

The Court requested that the Government file a supplemental sentencing memorandum discussing: (1) the sentences received by the Defendant's coconspirators; and (2) whether their conduct was more or less egregious than the Defendant's. The Defendant's charged coconspirators have all received significant sentences, through the imposition of either incarceration or six-figure criminal fines. Imposing the Government's recommended sentence upon the Defendant would not create any sentencing disparity with his coconspirators, as the Defendant's conduct was more egregious and he presents fewer mitigating circumstances. Accordingly, as discussed in the Government's Sentencing Memorandum (ECF No. 65), the totality of the § 3553(a) factors supports the Government's recommended sentence of sixteen months of imprisonment and a $10,000 criminal fine.

**I.    The Defendant's Coconspirators Have Received Significant Sentences in Light of Their Conduct and Personal Circumstances.**

The Defendant was a key player in separate bid-rigging and money-laundering conspiracies that were uncovered by the Government's investigation into the Chicago-

area commercial flooring installation industry. As a result of this investigation, five individual executives at flooring installation companies were charged with bid rigging in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[1] Each individual has pleaded guilty and has been sentenced[2]:

1. Michael P. Gannon, a former Senior Vice President of Sales at Mr. David's Flooring International, LLC ("Mr. David's"), was sentenced to six months of imprisonment, one year of supervised release, and a $23,000 criminal fine. *See* Judgment, *United States v. Gannon*, No. 19-CR-302 (N.D. Ill. Mar. 28, 2023) (ECF No. 70). Gannon was a prolific bid-rigger at Mr. David's, and helped his employer secure at least $2.3 million in rigged contracts. *See* Gov. Sentencing Mem. at 1–4, *United States v. Gannon*, No. 19-CR-302 (N.D. Ill. Mar. 13, 2023) (ECF No. 65). However, there were several mitigating circumstances, including that: (1) Gannon was among the first individuals to cooperate in the Government's investigation, and provided critical information against numerous other coconspirators, *see id.* at 6–8; (2) Gannon did not have an ownership interest in Mr. David's, so he did not directly profit from his bid rigging, *see id* at 1–4; and (3) Gannon was sixty-nine years old at the time of sentencing and reported numerous medical issues, *see* Def. Sentencing Memo. at 5–6, *United States v. Gannon*, No. 19-CR-302 (N.D. Ill. Mar. 13, 2023) (ECF No. 67).

2. Jerry P. Watson, the former President and owner of Commercial Carpet Consultants, Inc. ("CCC"), was sentenced to three years of probation and a $100,000 criminal fine. *See* Judgment, *United States v. Watson*, No.

---

[1] Four corporations have also pleaded guilty as a result of the Government's investigation: (1) PCI FlorTech, Inc. pleaded guilty to bid rigging and was sentenced to pay a $150,000 criminal fine, *see* Judgment, *United States v. PCI FlorTech, Inc.*, 19-CR-657 (N.D. Ill. Nov. 18, 2021) (ECF No. 41); (2) Commercial Carpet Consultants, Inc. pleaded guilty to bid rigging and was sentenced to pay a $1.2 million criminal fine, *see* Judgment, *United States v. Commercial Carpet Consultants*, *Inc.*, 22-CR-26-2 (N.D. Ill. Sept. 12, 2022) (ECF No. 27); (3) Mr. David's Flooring International, LLC pleaded guilty to bid rigging and money laundering and was sentenced to pay a $1.4 million criminal fine, *see* Judgment, *United States v. Mr. David's Flooring Int'l, LLC*, 21-CR-517 (N.D. Ill. Mar. 31, 2023) (ECF No. 166); and (4) Vortex Commercial Flooring, Inc. was sentenced to pay a $577,227 criminal fine after paying out $863,773 in voluntary restitution pursuant to its plea agreement.

[2] For completeness, the following list reports the sentences received by all of the individuals who pleaded guilty as part of the Government's investigation into the Chicago-area commercial flooring installation industry, rather than just the individuals who directly conspired with the Defendant. The Government's Version of the Offense identifies which of these individuals were directly involved with the Defendant, and describes the nature of that involvement. *See* PSR at 28–37 (Government's Version of the Offense).

22-CR-268 (N.D. Ill. Dec. 15, 2022) (ECF No. 34). Watson was the driving force behind CCC's participation in a long-running bid-rigging conspiracy with other Chicago-area flooring installers, through which CCC secured nearly $4 million in rigged contracts. *See* Gov. Sentencing Memo. at 1–2, *United States v. Watson*, No. 22-CR-268 (N.D. Ill. Nov. 3, 2022) (ECF No. 31). Although Watson did not cooperate with the Government's investigation, he was seventy-two years old at the time of his sentencing, and was suffering from a number of serious medical issues, including end-stage renal failure. *See* Def. Sentencing Memo. at 5–7, *United States v. Watson*, No. 22-CR-268 (N.D. Ill. Oct. 27, 2022) (ECF No. 30) (representing that, due to Watson's numerous ailments, his expected life span was only two years). During the sentencing hearing, the court stressed that it was sparing Watson from custody because of his terminal illness. *See* Sentencing Tr. at 29, *United States v. Watson*, No. 22-CR-268 (N.D. Ill. Nov. 22, 2022) (ECF No. 33).

3. Delmar E. Church, Jr., the former President and co-owner of Vortex Commercial Flooring, Inc. ("Vortex"), was sentenced to three years of probation and a $200,000 criminal fine. *See* Judgment, *United States v. Church*, 19-CR-917-1 (N.D. Ill. June 12, 2023) (ECF No. 151). Under Church's leadership, Vortex participated in the same bid-rigging scheme as CCC and Mr. David's, securing at least $9.41 million in rigged contracts, most of which were for work at public schools and colleges. *See* Gov. Sentencing Memo. at 1, 19, *United States v. Church*, 19-CR-917-1 (N.D. Ill. Mar. 31, 2023) (ECF No. 131). Church personally profited from Vortex's bid-rigging activity through his ownership stake in Vortex. *Id.* at 1. As with Gannon and Watson, there were significant mitigating circumstances, including: (1) the substantial cooperation that Church provided to the Government's investigation, *id.* at 10–12; (2) that he was seventy-five years old; and (3) that he still recovering from two strokes, *see* Def. Sentencing Memo. at 6–7, *United States v. Church*, 19-CR-917-1 (N.D. Ill. Apr. 7, 2023) (ECF No. 132). In light of these mitigating circumstances, the court determined that a non-custodial sentence was appropriate, but imposed a fine that was nearly three times greater than the Government's recommendation to emphasize that Church's bid-rigging warranted substantial punishment.

4. Robert A. Patrey, Jr., a former Vice President and co-owner of Vortex, was sentenced to three years of probation and a $225,000 criminal fine. *See* Judgment, *United States v. Patrey*, 19-CR-917-2 (N.D. Ill. June 12, 2023) (ECF No. 153). Like Church, Patrey was instrumental in helping Vortex secure at least $9.41 million in rigged contracts, and similarly profited from the bid-rigging conspiracy through his ownership stake. *See* Gov. Sentencing Memo. at 1–2, 14, *United States v. Patrey*, 19-CR-

3

917-2 (N.D. Ill. Apr. 27, 2023) (ECF No. 140). Patrey also cooperated with the Government's investigation, although his cooperation was more valuable than Church's cooperation. *See id.* at 5–7. As with Church, the court concluded that a non-custodial sentence was appropriate in light of Patrey's personal history and characteristics, specifically his lack of a prior criminal history, but imposed a criminal fine that was far above the Government's recommendation to demonstrate the seriousness of Patrey's conduct.

5. Kenneth R. Smith, a former Vice President and co-owner of Vortex, was sentenced to three years of probation and a $200,000 criminal fine. *See* Minute Entry, *United States v. Smith*, 19-CR-917-3 (N.D. Ill. June 8, 2023) (ECF No. 150). Smith's conduct, cooperation, and personal characteristics were all largely the same as Patrey's, which led the court to impose a similar sentence.

As described above, these defendants presented a variety of mitigating circumstances, such as substantial cooperation with the Government, advanced age, and poor health, that resulted in the imposition of below-Guidelines sentences. At the same time, the sentencing courts consistently recognized that the seriousness of the defendants' bid-rigging conduct requires significant punishment. Moreover, each of these individuals pleaded guilty to only a single count of bid rigging; none pleaded guilty to money laundering.[3]

## II. In Light of the Egregiousness of the Defendant's Conduct and His Personal Characteristics, the Imposition of the Government's Recommended Sentence Would Not Create a Sentencing Disparity.

The Defendant's conduct was more egregious than that of the other charged individuals because he was the lynchpin of two separate criminal conspiracies. In addition to bid rigging, the Defendant has also pleaded guilty to conspiracy to commit

---

[3] Another individual was charged with money laundering, but the charge against him was ultimately dismissed on the Government's motion. *See* Minute Entry Granting Mot. to Dismiss Indict., *United States v. Zmijewski*, 21-CR-558 (N.D. Ill. Oct. 19, 2022) (ECF No. 61).

4

money laundering in violation of 18 U.S.C. § 1956(h). Through his money-laundering scheme, the Defendant offered unauthorized discounts on flooring products to flooring installation companies in exchange for nearly $112,000 in kickbacks, which were laundered through a shell company solely created to conceal the illegality of these payments. *See* Carter Brett Plea Agreement ¶ 10(m)–(w), (ECF No. 10). Thus, the Defendant's money-laundering conspiracy was not merely a sideshow to his bid rigging, but was a highly profitable independent. As no other charged individual was convicted any offense other than bid rigging, the Defendant's additional crime warrants additional punishment.

Even setting the money laundering aside, the Defendant still engaged in some of the most brazen bid rigging of any of the charged individuals by essentially eliminating at least four years' worth of competition for flooring projects at Victim 12. Through the Defendant's attentive coordination, the three participating flooring contractors knew well in advance who was going to win each bid, giving them free reign to inflate their quotes. No other charged conspirator waged such a sustained and effective campaign against a single victim. Moreover, the Defendant's choice to repeatedly prey upon Victim 12, a vulnerable public community college, sets him apart from Gannon and Watson, who primarily rigged bids for contracts with private entities. And although the value of the bids rigged through the Defendant's scheme, $600,000, is less than the $9.41 million that Church, Patrey, and Smith secured for Vortex, the Defendant's calculated recruitment and supervision of his coconspirators places him in a similar degree of culpability. *See* PSR ¶¶ 12–13, 30–32.

Finally, the Defendant lacks many of the mitigating circumstances that resulted in the below-Guidelines sentences imposed on the other conspirators. In particular, the Defendant is younger than any of these individuals, and does not face the significant health problems of Gannon, Watson, and Church. *See* PSR ¶¶ 75–77. To be sure, the Defendant provided highly valuable assistance to the Government's investigation, but the value of that assistance is adequately recognized by the Government's recommended downward departure under U.S.S.G. § 5K1.1. (*See* ECF No. 65 at 9–11). Contrary to his suggestion, the Defendant's cooperation does not warrant a non-custodial sentence. (*See* ECF No. 70 at 5–6). Indeed, a non-custodial sentence for the Defendant would create a sentencing disparity with Gannon, who provided similarly valuable cooperation, but, despite his health issues, was nonetheless sentenced to six months of imprisonment solely for bid rigging.

In short, as compared to the other individuals charged in this investigation, the Defendant's conduct was generally more egregious, and his personal circumstances less mitigating. Thus, the imposition of the Government's recommended sentence would not create any risk of a sentencing disparity. Accordingly, the totality of the § 3553(a) factors supports the Government's recommended sentence of sixteen months of imprisonment and a $10,000 fine.

Respectfully submitted,

/s/ *Charles D. Fox*
CHARLES D. FOX
charles.fox@usdoj.gov
AMBRIS SARAVANAN
ambris.saravanan@usdoj.gov
CARLA M. STERN

6

carla.stern@usdoj.gov
Trial Attorneys

U.S. Department of Justice
Antitrust Division
209 South LaSalle Street, Suite 600
Chicago, Illinois 60604
Tel: (312) 984-7200

Dated: June 12, 2023